WILLOUGHBY JORDAN, guardian, plaintiff in error, *vs.* LEWIS B. MILLER, executor, *et al.,* defendants in error.

1. When the executor to a will filed a bill for direction as to the meaning of the will making the legatees parties, and it appeared that the testator had, by his will, made the following dispositions: 1st. He had provided for the payment of his debts. 2d. He had directed that after his debts were paid, his executor should divide his whole estate, both real and personal, into nine equal shares or parts. Each of his eight children, and their representatives, to have one equal share, subject to the drawbacks and refundings afterwards provided, and his three youngest daughters to have the ninth share extra. 3d. His will, item by item, then provided that each child should have deducted from his portion or share the advancements made the child, which advancements were specially mentioned and their value. 4th. As to the most of the children, he, item by item, directed that as a part of their portion, they should take certain specified property, in some cases fixing to the property a valuation himself, and, in other cases, saying that it should be valued by appraisers. 5th. As to one child, and as to her alone, after saying she should take, as part of her portion, certain eight negroes at a fair valuation, he adds, should the said negroes, at a fair valuation, amount to more than her just portion, she shall be required to refund the excess. 6th. In the sixth item, he directed that his son, Iverson G., take, as part of his portion, a negro man, Peter, at $1,200 00, another man, Green, at a fair valuation, and that he take, at his choice, lot of land one hundred and seventy-nine, at $1,000 00, or lots one hundred and seventy-eight, one hundred and seventy-nine, one hundred and sixty-five, one hundred and sixty-six, at a valuation. 7th. He di-

rected that all of his lands not herein otherwise disposed of, should be sold or kept together, as his executors should judge best, and that his negroes not otherwise disposed of or mentioned, should be divided among his children according to the terms of this his last will, and that his other personal property should be sold for general distribution:

*Held,* That taking the whole of the will together, it was the clear intent of the testator to divide his property equally among his children, except that he gives his·three youngest daughters one-ninth of the whole, extra, of an equal share.

2. None of the property donated in the will to be taken by the several legatees as parts of their portions at a fixed price, or at a fair valuation, are absolute specific legacies, but are dependent upon the amount coming to each on a division of the whole estate into nine parts, as provided for in the will, and if the property pointed out as to be taken by any one legatee exceeds his portion, he must account for the excess.

3. The sixth item of the will, as to the property to be taken by Iverson G. Miller, stands on the same footing as the other items, to-wit: he takes the property there mentioned as part *of his portion;* if its value exceeds his portion, as provided by the second item, he must account for the overplus.

4. When the executor had permitted one of the legatees to have the use of the land mentioned in the will as part of his portion, conditionally, upon the final settlement, said legatee should account in said settlement for the use of said land, according to the facts and the condition of the estate.

· WARNER, Chief Justice, dissented.

Construction of will. Specific and general legacy. Abatement. Advancement. Before Judge HARRELL. Randolph Superior Court. May Term, 1872.

Wiley Miller, on the 19th of November, 1863, made his will, appointing Lewis B. Miller and Moses H. Baldwin as his executors. Testator died, and on the 5th of September, 1865, Lewis B. Miller was qualified as executor. The said executor filed his bill against George W. Coxewell and wife, Moses H. Baldwin and wife, Willoughby Jordan, guardian of Missouri P. Miller, minor orphan of Iverson G. Miller, and others, heirs-at-law and legatees of Wiley Miller, deceased, for a construction of the various provisons of said will, and for direction. The issues formed upon this bill were tried, and a decree rendered construing the will, giving direction to the executor as to the rights of all the parties. Willoughby

Jordan carried said cause to the Supreme Court, alleging error in the construction of the will as to the rights of his ward, Missouri P. Miller, minor, and the decision of the Superior Court was reversed. See *Jordan vs. Miller*, 41 *Georgia Reports*, page 51. At the next succeeding term of the Superior Court of Randolph county, the judgment of the Supreme Court was made the judgment of said Court and a part of the decree, without a second trial before a jury. The complainant excepted to this proceeding, and carried the cause again to the Supreme Court, where the decision of the Superior Court was again reversed and a new trial ordered. See *Miller vs. Jordan*, 43 *Georgia Reports*, page 316.

The solitary issue, about which there is now any contest, submitted to the jury, was as to the title of Willoughby Jordan, as guardian of Missouri P. Miller, to lots of land number one hundred and seventy-nine, one hundred and seventy-eight, one hundred and sixty-five and one hundred and sixty-six, said guardian claiming said land as the absolute property of his said ward, and said executor and other legatees insisting that said lots were still the property of the estate, and subject to an equal distribution under the provisions of said will. The will is fully set forth in the decision of the Court.

Upon this issue the following evidence was introduced :

Willoughby Jordan, sworn; Witness testifies positively that in the winter of 1865, he as guardian for Missouri P. Miller, elected to take said four lots of land at the valuation fixed by the appraisers, to-wit: $2,400 00, and that the executor, Lewis B. Miller, gave his assent and placed him in possession of the land as guardian; that witness had held it as such from that time to the present; witness afterwards gave the executor an instrument in writing to protect him, promising to pay rent for the year 1866 if the land should be decided by the Court to be the property of the estate; that the executor never demanded the rent, or exercised or claimed any control over the property.

Lewis B. Miller, sworn: Testified that witness did not assent to the legacy unconditionally, or turn over the property,

but placed Jordan in possession, taking his rent note, with the condition that it was to be paid if the land was decided to be the property of the estate, and not the property of his ward; witness had lost the note; witness admitted that he never had demanded payment of the note, or rent, or possession of the land.

Other witnesses were examined to prove that the executor had referred parties wishing to rent to Jordan as the proper person to rent from, and had refused to allow Jordan to buy property at the sale of personalty for the child, upon the ground that he had taken the land, and that was as much as said minor child would be entitled to.

The jury found against Willoughby Jordan, guardian, decreeing in effect, that he take the land in controversy subject to an equal division of the estate, charging him with the interest on the valuation of the same.

Willoughby Jordan, as guardian, as aforesaid, assigns error upon the following rulings of the Court:

1st. In refusing to charge the jury as requested, to-wit: "that if the guardian elected and the executor assented to the legacy, the title vested in the minor without abatement, and without reference to the value of the estate, subject only to the rights of creditors."

2d. In refusing to charge as requested, to-wit: "that in the absence of proof of debts, he had the right to elect now, and to compel the assent of the executor, and to take the legacy without any abatement, or without reference to the value of the estate."

3d. In charging the jury in effect, as follows, to-wit: "that if the guardian did elect, and the executor did assent, he took the same subject to an equal division of the estate."

4th. In charging the jury as follows, to-wit: "that if the guardian now elect to take the land, he takes it subject to the same conditions, to-wit: an equal division of the estate."

5th. In charging the jury, as follows, to-wit: "That the guardian, in case he did not elect heretofore, and does now

Jordan *vs.* Miller *et al.*

elect, is to be charged with the interest upon the valuation of the lands, or the rent."

H. FIELDER, for plaintiff in error.

Willoughby Jordan, as guardian for Missouri P. Miller, took said land absolutely: 41 Ga. R., 51. This is a specific legacy and does not abate: Code, secs. 2422, 2431. The income goes with the legacy: Code, sec. 2423.

JOHN T. CLARK, for defendants.

McCAY, Judge.

1. The construction of this will is simply a question of what the testator meant by the dispositions he has made. Did he intend the various legatees should take the property he has specially pointed out as to be taken by them, at all events, no matter what his estate should be found to be worth? Or did he intend that his property should be equally divided between his children, each of them taking the specific property mentioned at its value *in that division?* I do not see what the rules of law—as to the specific and general legacies standing on a different footing as to abatement—have to do with it. There is no question but that if there be a deficiency of assets the general legacies abate before the specific. But, without doubt, a man may, by his will, provide that specific legacies shall abate *before* general ones. He may hamper a specific legacy with any limitations or contingencies he pleases, provided such contingencies are not *illegal*. And surely it is not illegal for a man to provide in his will that specific legacies shall abate equally with or even before general ones. Clearly a man might give a legacy of a particular farm to A, provided his estate, after paying his debts, should have enough to give each of his children a certain amount. The whole question, therefore, is what did the testator mean? This, it seems to me, is very clear. He provides that, after his debts are paid, *his estate* shall be divided into *nine equal shares or parts,* each of his eight children to take a share or part, and his three

youngest daughters to take the ninth share between them extra. He then, item by item, mentions the advancements to be charged against each child, and fixes the value of each advancement. As to nearly all of his children he mentions certain specific property, which he wishes them severally to take as part of their several shares, and he either fixes a value on said property himself or says they shall take it at a valuation to be fixed in a way he points out. The clause of the will now in dispute provides that his son Iverson shall take *as part of his share* or portion a negro man, Peter, at $1,200 00 ; another man, Green, at a fair valuation, and that he take as · his choice lot of land number one hundred and seventy-nine, at $1,000 00 ; or lots one hundred and seventy-nine, one hundred and sixty-five and one hundred and sixty-six, at a fair valuation. At the time this will was made it is probably true that the testator had a plenty of property to insure that each of his children's shares would be enough to allow such child to take as part of his share the specific property mentioned, and no confusion or irregularity ensue. But, by the result of the war, his property, largely in slaves, is considerably lessened in quantity and value, and is mostly in land, so that if his children, and especially Iverson, take the land mentioned it will, at its value, be far more than his share. As I have said, the only question is, what the testator meant. 1st. He emphatically directs his property to be divided into nine equal shares, giving to each child (eight) one share and to his three daughters the other extra, and in every item of his will he labors to show that his great leading idea is to do equal justice by dividing his property equally, with the single exception that his three daughters are to have one-third of one-ninth of the whole more than the others. He goes into detail as to the advancements, and shows in every conceivable way that his intent was to give his children equal shares, charging each with the amount already received. But it is plain, that *subject to this great leading idea,* he desired certain of his children to have certain specific property, and he expresses this idea as to each one by saying that he or she shall take as *part*

*of his or her portion* the specific property mentioned at a specified value, either fixed by the testator himself, or to be fixed by a valuation. In this special clause he says Iverson is to take this lot of land one hundred and seventy-nine at $1,000, or one hundred and seventy-nine, one hundred and sixty-five, and one hundred and sixty-six, at a valuation, as a part of his share. He is not to take it absolutely, but as part of share, and at a valuation. The plaintiff in error would reject this part of the testator's intent altogether. He sees nothing in the direction that the whole shall be divided into nine *equal shares;* he sees nothing in the regular charge against each share of the *advancements;* he sees nothing in the provision of the *payment* of his *debts* before this equal division shares is made; he sees nothing in the provision that the land mentioned is to be taken at a *valuation,* and nothing in the provision that it is to be taken as *part of his share.* His eye is completely filled with the fact, that the testator intends Iverson to have certain specific lands, forgetting the qualifications added, to-wit: that the debts are to be paid, then an equal division made of what is left, in nine portions; then each portion to be charged with advancements, and then that the property specifically mentioned as to be taken by particular divisees, to be taken at a valuation and *as part of* his share.

2. He is to take it, says the plaintiff in error, as a specific legacy. It is not to abate for debts. It is not to be charged with advancements, it is to be taken even if it be *more* than his share; it is to be taken, whatever value it may have. Every other thing thought of, provided for, and looked to by the testator, is to be swallowed up in the single thought of a specific legacy. I do not think this. It is clear to me, that the testator intended Iverson to take this land, subject to his father's debts, subject to the advancements, and, above all, subject to the great thought and purpose of the will, as *part of his equal share.* If that share should exceed the value, then well; if not, he was not to take it at all events, but subject to the provision of equality. Had the testator intended to give absolute specific legacies, he would have given them in terms. He would have

given them distinctly; and if he intended that, in consequence of these specific gifts, their share of the residue should be less, he would have said the balance is to be equally divided into nine shares—each person taking a specific legacy to have a share as much less than the others as his specific legacy is worth. But he does not do this. He provides that the whole, after paying the debts, is to be equally divided into nine shares; he directs each share to be lessened by the advancements, and that each legatee shall take the specific property mentioned as part of his share, at a valuation. To divide this property on the basis proposed, would be, in my judgment, right in the teeth of this will. The will provides for equality; the proposition is to make it unequal. The will provides that he shall take the specific property as *part* of his share, at a valuation; the proposition is that he shall take it independently of his share, and independently of its value, unless his share is more than the value. This, in my judgment, would be contrary to the clear, positive directions of the will, and grossly unjust besides. Nor is there the least trouble in carrying out the will as the testator intended. He intended each to take certain specific property, at a fixed valuation, as part of his share. If his share, after paying the debts, and accounting for advancements, was more than the specific property at its value, each was to take that much less. If the share was less, he was to pay to the others the difference. Nothing is more common in divisions than this. It is very often not desirable to sell property for a division, and it is common for the dividers to give to one a specific article, charging it with a sum to be paid. That was clearly the intent of the testator in this case. That intent was not illegal, unwise, or unjust, and it ought to be carried into effect.

3. When this case was before this Court before, the only matter was between the executor and this particular legatee. They were the only parties here, and the question was simply as to the value and assent of the executor. The bill has now been amended, the assent denied, and *all the parties* are before the Court. The whole estate is to be divided, and the rights

of each legatee, not only as to the executor, but as to each other, are to be settled by the decree. The jury has found there was no assent, and the proper construction of the will is the real issue.

5. We should not have given the direction to the jury the Judge gave, as to the *mesne* profits or interest, but the counsel for the plaintiff in error, in his argument, distinctly waives that ground of error, and if he is content with it, we have no desire to interfere. It is clear to us, that the will does not intend any of these legacies to be absolute, but that they are all to be taken only as part of the share of the taker, and subject to the diminution that share may receive from the payment of debts, or from the loss of the testator's property, without fault of the executor.

Judgment affirmed.

MONTGOMERY, Judge, concurred, but furnished no opinion.

WARNER, Chief Justice, dissenting:

On the 9th day of November, 1863, the testator made his will, bequeathing and devising certain specific and general legacies to his children named therein. The object and intention of the testator, as it appears from his will, was to make an equal division of his property among his children upon a final distribution thereof, so far as the amount to be received by each, was concerned, and to accomplish that object, he placed a valuation on the specific legacies bequeathed and devised to each, so that when the general distribution of the property, not specificially bequeathed and devised should take place, it might appear what was *the value* of the specific legacy which each legatee had received. In other words, the legatees under his will, were to take certain described property, as *specific* legacies, at the valuation placed upon them by the testator, or at its appraised value, as a part of their portion or share of his estate, and when the general distribution of his estate should take place, as provided by his will, the *specific* legacies should be estimated according to the value placed thereon by the tes-

tator, or according to the appraised value thereof. There was a large portion of the testator's property that was not specifically disposed of by his will. The fifteenth clause of the will provides, that his undevised slaves should be appraised, and divided amongst his children, according to the terms of the will, and that all his other personalty be sold by his executors according to the law for general distribution. The eleventh item of the will gave to his executors the right to sell or keep as they pleased, the balance of his land (not specifically disposed of,) as might be best for all his heirs. At the time of the making of the will, the testator had a large residuary estate to be divided among his children under the will, which had not been *specifically* bequeathed or devised to any one of them. The sixth item of the testator's will is as follows : "I will and direct that my son, Iverson G. Miller, take as part of his portion, the negro man Peter, whom he has now in possession, at $1,200 00, and my negro boy Green, at a fair valuation, and that he take *at his choice*, lot of land number one hundred and seventy-nine, at $1,000 00, or lots numbers one hundred and seventy-nine, one hundred and seventy-eight, one hundred and sixty-five and one hundred and seventy-six, at a fair valuation, all of said lots being in the fifth district of the aforesaid county of Randolph." Iverson G. Miller died before the testator, leaving as his sole heir and legal representative, his infant child, Missouri P. Miller, who is now the legatee under this clause of the testator's will.

It appears from the evidence in the record, that Jordan was appointed guardian of Missouri P. Miller, and in 1865, he elected as such guardian, to take for his ward, the four lots of land specified in the testator's will, at the valuation made by the appraisers of the estate, to-wit: at the value of $2,400 00. It also appears from the evidence of Jordan, that the executor, Louis B. Miller, placed him in possession of the lots of land as guardian, and that he has continued in possession of the same up to the present time, and that the executor *assented* to the same. The executor testifed that he placed the guardian in possession of the land, on condition that it was decided that the land was

the property of the estate, and not the property of his ward, and that he did not assent to the legacy unconditionally, but admitted he had never demanded rent, or possession of the land as executor. The only subject matter in controversy between the parties, is in relation to the four lots of land. On the trial, the jury under the charge of the Court, rendered a verdict that the executor had not assented to the legacy, and that the guardian should keep the land at the appraised value, subject to an equal division with the other legatees under the will, and charged him with interest on the value of the land as fixed by the appraisers. The verdict is substantially in accordance with the charge of the Court, to which the counsel for the guardian excepted. There are two questions to be decided in this case: First, whether the bequest or devise of the four lots of land was a general, or a specific legacy. Second, if it was a *specific* legacy, can the specific legatee be compelled under the law, to abate that specific legacy, at the instance of the executor, for the benefit of the other legatees under the will, who may have received less than the appraised value of that specific legacy? What is a specific legacy? A specific legacy is one which operates on property particularly designated: Code, 2422. The four lots of land bequeathed or devised to Missouri P., by the testator's will, are particularly designated, by number, and district, in the county of Randolph. The will distinguishes these particular lots of land from all his other property, and if it is *not a specific legacy* in the sense and meaning of the law, I confess my utter inability to comprehend what the law means by a specific legacy, as contradistinguished from a general legacy.

The four lots of land are *specifically* given to the legatee as a *part* of her portion, to be taken at her choice, at a fair valuation. The fact that the specific legacy is to be a *part* of the legatee's portion of the testator's estate, or that she is to take the designated lots of land at a *fair valuation*, does not make the legacy any the less a *specific* legacy, in the sense of the law. The same individual may be both a specific and a residuary legatee: *McGinnis vs. McGinnis*, 1 *Kelly*, 496. Mis-

Jordan *vs.* Miller *et al.*

souri P. Miller was both a specific and a residuary legatee, under the testator's will, and the only reason why a valuation was placed on the specific legacy by the testator was, that when the *residuum* of the estate came to be distributed, it might be seen how much in value each *specific* legatee had received out of his estate.     The testator was looking to the distribution of the *residuum* of his estate among his children, which constituted the greater portion thereof, when he made his will.     The next question is, can the *specific* legatee under the will of the testator, under the law, be compelled, at the instance of the executor, to abate any portion of her specific legacy in favor of the residuary or general legatees under the will, where, from causes unforeseen by the testator at the time of making his will, such residuary or general legatees have not received as much in value from his estate as the specific legatee ?   There are no creditors of the estate.

When this case was before this Court at a former term, at the instance of the executor, the Court gave a construction to this clause of the will, and held, that if the guardian of Missouri P. elected to take the four lots of land at the appraised value thereof, and went into the possession of the same with the assent of the executor, he is entitled to hold the same as the property of his ward, under the will, without *abatement*, so far as the executor is concerned : See *Jourdan vs. Miller*, 41 *Georgia Reports*, 51.   The only disputed fact that exists in the case now, different from the facts that were then before the Court is, that the assent of the executor to the guardian's taking possession of the land for the benefit of his ward was conditional and not absolute.     The fact that he did take possession is not disputed, or that the executor has never since demanded possession of the land, or the rent thereof, from the guardian, but he now seeks to have the specific legacy abated for the benefit of the other legatees under the will, on the ground, that he never assented to the specific legacy.   This is an *adroit* attempt to evade the judgment of this Court in regard to the rights of the specific legatee under the will of the testator.   The assent or dissent of the executor has nothing

to do with her legal rights under the will. · If he has administered it, and turned the property over to her guardian according to law, he has no right to interfere with it. The assent of the executor to a legacy may be presumed by his conduct, as well as by his express consent, and he cannot, by capriciously withholding his assent, destroy the legacy, and a Court of equity may compel him to assent to the legacy : Code, 2416. The Court, under the facts of this case, should have compelled him to assent to the legacy, even if his consent could not have been fairly presumed by his conduct.

The specific legatee was not bound to pay interest to the executor on the value of her specific legacy for the benefit of the other legatees: Code, 2423. But in no view of the law, as applicable to the facts of this case, as I understand it, can the specific legatee be compelled or required to contribute, or abate any portion of her specific legacy, in favor of the general or residuary legatees under the will of the testator, and the executor had no legal right to the possession of any part of it, for the purpose of making distribution thereof to them : 1 Roper on Legacies, 361; 2 Williams on Executors, 1165. The rule is, that residuary and general legacies abate in favor of specific legacies, but specific legacies do not abate in favor of residuary or general legacies under the will of a testator.

But it is said the testator's intention was to distribute his property equally among his children, that each one should receive the same amount in value ; that such was the intention of the testator is quite clear, and if his property had remained in the same condition at the time of distribution, as it was at the time he made his will, his intention could, and doubtless would have been carried out ; but it did not remain in the same condition, and it must now be distributed under the law which regulates specific legacies, and general and residuary legacies. The law must now control that matter, whatever may have been the tastator's intention when he made his will The intention of testators cannot override the law.

As was well said by Nisbet, Judge, in delivering the judgment of this Court in *Williams vs. McIntyre,* 8 *Georgia Re-*

*ports,* 36. "The testator's intention is imperative on the Courts, unless it is in conflict with some established rule of law. If it is, the law is more imperious than the intention, and the latter will yield to the former. No man's will is so high in its obligations upon the Courts, as the laws of the land. If *the intention* could prevail against *the law,* then the will of a testator would make, or repeal the law, and the effect would be, that there would be no law to regulate the transmission of property by will." To hold that the bequest or devise of the four lots of land to Missouri P., in the testator's will is *not a specific legacy,* would be to *ignore* the law which defines what a specific legacy shall be. To hold that her specific legacy shall abate in favor of the general or residuary legatees of the testator, and that the executor can recover any part thereof for the purpose of distributing the same to them, would be to *ignore* the law regulating the payment of specific legacies, and general and residuary legacies under the wills of testators, when there is not sufficient assets to pay all in an equal amount. In my judgment, Missouri P., the specific legatee of the four lots of land specified in the testator's will, is entitled to have and hold the same, *without abatement,* as against the claim of the executor to recover any part thereof, for the benefit of the other legatees under the testator's will, and that the judgment of the Court below should be reversed.