PARK *v.* FOGARTY, executor, *et al.*

HOLDEN, J. 1. From an examination of the entire will under construction (which is set out at length in the statement of facts), it is apparent that the word "estate," appearing in the last clause of the fifth item of the will, was used by the testator as denoting all the residue of his property, both real and personal, after the executor had "wound up the business" of the testator in accordance with the directions contained in the will (which would include the payment of debts and the special legacies named in the 7th item of the will), and that the testamentary scheme was that the executor was to hold intact the entire corpus of such property until the youngest child attained the age of twenty-one years.

2. The eighth item of the will did not make a specific devise of "the residence No. 815 Telfair," mentioned therein, to the legatee named in said item by the testator as "my daughter Lizzie," but was a direction that when the time for division provided for in the will arrived, namely, at the majority of the youngest child, such legatee should then receive this residence, at a valuation of $2,500, as a part of her share of the property devised to her. Such legatee was not entitled to the use or possession of, or the income from, the residence until the youngest child arrived at the age of twenty-one years. *Jordan* v. *Miller*, 47 *Ga.* 346.

3. Until the time for distribution arrived, the residence referred to in the preceding headnote would be a part of the general property of the estate of the testator, and the income therefrom belongs to the estate, subject to administration by the executor in accordance with the terms of the will in the same manner as the income from other property of the estate.

*Judgment affirmed. Beck, J., absent. The other Justices concur.*

AUGUST 9, 1910.

Petition for direction. Before Judge Hammond. Richmond superior court. April 19, 1909.

This case arises on a petition filed by the executor for direction as to the construction to be placed upon the will of his testator. In an agreed statement of facts, used upon the hearing before the judge to whom the case was submitted, the following facts are set forth: "1. The testator's will was drawn by himself. 2. That testator died August 19, 1906, leaving as his sole heirs at law the following children: Elizabeth (styled Lizzie in his will), then aged 21 years, William, then aged 19 years, George, then aged 12 years, and Tom, his youngest child, then aged about 10 years. 3. That none of these children was then married, and that they all lived with their father at 813 Telfair St., Augusta, Ga., their aunt, Miss Marie Mollony, residing with the family and assisting testator's daughter in managing their domestic affairs. 4. That at the time said will was made Miss Elizabeth Horkan was a young lady, just of age; that William Horkan was then a minor; and that Tom and George Horkan were young schoolboys." It was further agreed "That at the time of the death of P. D. Horkan he conducted, in the city of Augusta, Georgia, a large wholesale and retail dry goods store," and "That at the present time, all debts and legacies having been paid, other than legacies to children, the estate is worth approximately $120,000." The will in question was as follows:

"Know all men by these presents: That I, Patrick D. Horkan, in the name of God, and of sound mind and capable of with disposing of my earthly goods, do make this my last will and testament and wish and desire my estate to be disposed of according to the laws of Georgia. It is my wish and desire that all my debts and the debts of P. D. Horkan be paid in full.

"1st. It is my wish and desire that all local or city bills be paid at once, and paid out of the receipts of the current business of the store.

"2nd. As I owe large amounts to the banks of the city for borrowed money, for the keeping up and enlarging the business of P. D. Horkan & Co., and as the said different banks of the city hold as security for the loans the various stocks and collaterals that I own, it is my desire that they be paid, and the collaterals be taken up and returned to the administrator of my estate; and to

enable said administrator to promptly discharge those debts and have said securities returned, I authorized the use of fifty thousand dollars of the life insurance to be issued to cancel those debts. The merchandise debts that the firm of P. D. Horkan & Company owes to be paid out of the current receipts of the store.

"3rd. It is my will and desire that the business run on and be continued not longer than the present leasehold of the store now occupied by P. D. Horkan & Co., and the stock of goods on hand be not sacrificed in bulk, but sold to the best and most favorable advantage. The business to be wound up before October 1st, year 1907. I desire that Sam P. Thomas be continued as head clerk in charge, as he is most familiar with the trade and customers, and whose integrity I regard highly. The administrator can buy for cash such goods and domestics, thread, and any other that is necessary to do; keeping intact and in healthy condition the general assortment, but no other merchandise is to be bought.

"4th. I appoint and designate D. G. Fogarty administrator of my estate, and the said D. G. Fogarty and Miss Maria Mollony, my beloved sister-in-law, guardians for my children.

"5th. When my business is wound up, the amount of money on hand to be placed at interest, or invested in real estate until Thomas my youngest child is of legal age, and then the estate to be equally divided between the survivors of my children, share and share alike.

"6th. The amount of my life insurance I desire collected, and as far as can be possible in the judgment of the administrator to be kept together intact for investment. The amount is one hundred thousand dollars, carried in the following societies: Catholic Knights, Equitable Life, Mutual of New York, Mutual of N. J., New York Life, Northwestern of Milwaukee. The administrator can use one half of this to pay off the banks my debts and take up the collaterals that they hold. The last two policies in the Equitable Life I desire to be reserved and not used. The stock of merchandise and accounts are large, and I desire all the debts to be paid out of the business.

"7th. I desire that my administrator be required to give no bond for his carrying my desires and the articles of this will and testament. I desire that Miss Mollony receive one thousand dollars of my estate for her kind services to my children. I desire the

pastor of St. Patrick's church to receive one hundred dollars for masses for my soul, and my remains to be placed right beside those of my beloved departed wife.

"8th. It is my desire that the residence No. 815 Telfair be given to my daughter Lizzie, as part of her portion of my estate and same to be taken at $2500.00. The present residence 813 Telfair which was owned by my departed wife, I desire to be used jointly and in common by my family until Thomas is of age, and then to be disposed of as my children regard best for them.

"9th. I will and desire that my sister-in-law, Miss Mollony, be made guardian jointly with D. G. Fogarty, both to see that George and Tom are well educated out of their share of the income from estate. That all of them shall be allowed the income to live on that is received or derived from net income.'

"10th. I desire all my debts paid as soon as possible out of sales from the merchandise and accounts now on hand.

"11th. It is my desire that my son William assist D. G. Fogarty all he can to make a successful sale of the stock of merchandise now on hand.

"12th. It is my desire, when the debts are all paid off, that the administrator take back from banks the collaterals and in his judgment hold or sell any of the stocks for reinvestment that he regards best. I desire that all investments or money invested shall be put in real estate as far as possible, and that my estate shall be managed according to the laws of the State of Georgia. Signed this the sixth day of March, Nineteen Hundred and Six. 6th March, 1906. Patrick D. Horkan."

It was the contention of the plaintiff in error, that, under the fifth item of the will, only the cash money which the executor had on hand after winding up the business of the testator as directed by the will was to constitute "the estate" which was to be divided among the survivors of the testator's children when the youngest child became of legal age, and that she was entitled to receive from the executor her share of the remaining property of the estate. She also contended, that, under the eighth item of the will, the residence therein mentioned was a specific legacy to her and became her property in fee simple, that she was entitled to its immediate use and enjoyment and to the income therefrom from the death of the testator, and that such income was not subject to dis-

tribution by the executor as general income of the estate. The court below rendered a decree holding adversely to each of these contentions, the effect of the decree being to adjudge that a proper construction of the will was that the plaintiff in error was to receive none of the corpus of the estate until the youngest child became of age; that until then the residence property remained a part of the corpus of the estate, and that the income therefrom was subject to equal distribution to all the children of the testator along with other income of the estate. To this decree the plaintiff in error excepted, making assignments of error thereon which raised the contentions above stated.

*Park & Park,* for plaintiff in error. *D. G. Fogarty,* contra.